UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE KARLA RUTH BONZELAAR,

    Debtor.

_____/

Bky. No. 04-00967

KEITH LANKHEET,

    Plaintiff/Appellant,

v

JOHN A. PORTER,

    Defendant/Appellee.

_____/

Adv. Proc. No. 04-88294

Dist. Ct. No. 1:05-cv-519

Hon. Wendell A. Miles

OPINION AND ORDER

    Appellant, Keith Lankheet, filed this appeal from the Judgment of the Bankruptcy Court entered on June 20, 2005, in an adversary proceeding, finding that certain real property was part of Debtor Karla Bonzelaar's bankruptcy estate.[1]  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1) and Federal Rule of Bankruptcy Procedure 8001(a). For the reasons set forth below, the Court affirms the Judgment of the Bankruptcy Court.

Background

    Keith Lankheet is the principal in Laketown Property Services (Tr. 24), which primarily finances manufactured homes (Tr. 11).  Mr. Lankheet also owned rental property, including real property in South Haven, Michigan that he acquired in 1991 (South Haven property) (Tr. 11, 12).  Karla Bonzelaar was a long-time friend of Mr. Lankheet (Tr. 19), and a

---

[1] The Defendant/Appellee, John A. Porter, is the Trustee of Ms. Bonzelaar's bankruptcy estate.

part-time employee of Laketown Property Services (Tr. 41). One of her responsibilities was to attend closings on behalf of Laketown Property Services (Tr. 41).

Mr. Lankheet testified that he attended a seminar in Florida at a time when he was contemplating selling some of his rentals. He asked some of the speakers at the seminar how he could reduce or avoid tax liability from the sale of his rentals (Tr. 15). They suggested that he deed the property to a trusted friend, who would sell the property, pay taxes at a lower rate, and turn the remaining proceeds over to Mr. Lankheet (Tr. 15).

In December 2003, Mr. Lankheet negotiated a buy-sell agreement pertaining to the South Haven property with a Ms. Turner. The agreement is dated December 24, 2003, and it appeared to be signed by Karla Bonzelaar as "seller" (Tr. 31). Ms. Bonzelaar testified that it was not her signature (Tr. 45). Mr. Lankheet testified that he did not believe Ms. Bonzelaar had actually signed the document (Tr. 31), and he acknowledged that he had not asked Ms. Bonzelaar's permission to sign her name (Tr. 32).

On December 29, 2003, Mr. Lankheet executed a quit claim deed granting the South Haven property to Karla Bonzelaar. Mr. Lankheet's wife Michelle Lankheet, and his step-father Donald Veele, witnessed the signing (Tr. 14), and the deed was recorded (Tr. 16). The consideration stated was one dollar. The deed stated that it should be returned to Karla Bonzelaar after recording, and that subsequent tax bills should be sent to her. However, the address given for Karla Bonzelaar was actually Mr. Lankheet's address. Mr. Lankheet continued to pay the mortgage, utilities bills, and taxes (Tr. 16-17).

Sometime in mid-January 2004, Mr. Lankheet telephoned Ms. Bonzelaar from Florida and directed her to attend a closing involving the South Haven property (Tr. 42). Ms.

Bonzelaar advised Mr. Lankheet that she did not have authority to sign closing documents for the South Haven property because it was not property owned by Laketown Property Services (Tr. 42). Mr. Lankheet responded that there would be no problem because he had put the property in her name (Tr. 42). Ms. Bonzelaar testified that Mr. Lankheet had never discussed conveying the property to her (Tr. 41), and that she was shocked when she learned of the conveyance (Tr. 42). On January 24, 2004, Ms. Bonzelaar resigned her position with Laketown Property Services (44). She wrote Mr. Lankheet a personal letter dated January 27, 2004, expressing her shock, outrage and feeling of betrayal when Mr. Lankheet put the South Haven property in her name without her knowledge or permission. Mr. Lankheet asked Ms. Bonzelaar to deed the property back to him (45-6). Mr. Lankheet, however, was apparently not aware that Ms. Bonzelaar was preparing to file bankruptcy. She informed her bankruptcy attorney of the situation. The attorney advised her that she could not reconvey the property, or it would be considered a fraudulent transfer under bankruptcy law. On January 30, 2004, Ms. Bonzelaar filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code, with the South Haven property listed as an asset (52-53). Ms. Bonzelaar informed Mr. Lankheet that she would not quit claim the property back to him. In April 2004, Laketown Property Services forwarded to Ms. Bonzelaar a property transfer affidavit from the City of South Haven, addressed to Ms. Bonzelaar at Mr. Lankheet's address (49).

  Mr. Lankheet filed a complaint in the bankruptcy court for a declaratory judgment that the deed transferring the property to Ms. Bonzelaar was void. The bankruptcy judge found that Mr. Lankheet had delivered the deed and that Ms. Bonzelaar had accepted. The South Haven property was therefore property of Ms. Bonzelaar's bankruptcy estate and Mr. Lankheet

had no legal interest in the property. Mr. Lankheet appealed this decision, framing his issues as follows:

> (1) Did the Bankruptcy Court commit error in determining that Plaintiff made a gratuitous conveyance of his property valued at approximately $134,000.00 to the grantee (debtor) when (a) the deed was never delivered [to] the grantee; (b) Plaintiff continued to exercise control and dominion over the property; and (c) Plaintiff never intended the grantee to receive the benefit of the deed/ownership of the property?
>
> (2) Did the Bankruptcy Court commit error in determining that the grantee (debtor) accepted the gratuitous conveyance of the Plaintiff's property when the grantee (a) initially did not know of the undelivered deed; (b) became very angry about the undelivered deed upon learning of it; (c) quit her job with Plaintiff rather than accept the conveyance; and (d) refused to exercise any dominion or control over the property?

                          Standard of Review

On appeal from a bankruptcy court, a district court applies the clearly erroneous standard of review to findings of fact, and reviews questions of law de novo." In re Gardner, 360 F.3d 511, 557 (6th Cir.2004).

                              Discussion

The parties agree that the question of whether Mr. Lankheet conveyed the South Haven property to Ms. Bonzelaar is a question of state law. See Barnhill v. Johnson, 503 U.S. 393, 398 (1992) (noting that under the bankruptcy code "property" and "interests in property" are creatures of state law) (citing McKenzie v. Irving Trust Co., 323 U.S. 365, 370 (1945) and Butner v. United States, 440 U.S. 48, 54 (1979)). Under Michigan law, a deed conveys a present interest in land if it has been delivered and accepted. Gibson v. Dymon, 274 NW 739, 740, 281 Mich. 137, 141 (1937). "The purpose of the delivery requirement is to show the grantor's intent to convey the property described in the deed." Energentics, Ltd. v. Whitmill, 497 NW 2d 497,

505, 442 Mich. 38, 53 (1993).  Delivery in this context does not refer to a physical transfer of the instrument. "[T]he act of delivery is not necessarily a transfer of the possession of the instrument to the grantee, and an acceptance by him, but it is that act of the grantor, indicated either by acts or words, or both, which shows an intention on his part to perfect the transaction by a surrender of the instrument to the grantee, or to some third person for his use and benefit.  Schmidt v. Jennings, 102 NW 2d 589, 593, 359 Mich. 376, 381 (1960).  "The test is whether it can be said that delivery of the deed was such as to convey a present interest in the land. . ."  Hynes v. Halstead, 276 NW 578, 581, 282 Mich. 627, 637 (1937).  Although the recording of a deed raises a presumption of delivery, the presumption merely shifts the burden of proof onto the party challenging the delivery.  Energentics, 497 NW 2d at 505, 442 Mich. at 53 (citations omitted). Plaintiff argues that the evidence demonstrates that he had no intent to "convey a present interest in the land," where he continued to exercise dominion and control over the property, never delivered the deed to Karla Bonzelaar, and did not intend to simply give her a gift worth $134,000.  Mr. Lankheet's testimony makes it clear that he intended to "convey a present interest" in the South Haven property for at least the very short period of time it would take for Ms. Bonzelaar to execute the documents selling the property to Ms. Turner.

Although Mr. Lankheet cites to Hynes, it offers no support for his position.  In Hynes, the decedent's heirs filed suit to set aside a deed executed several years before the grantor's death, and given to the grantor's employee to hold until the grantor's death or until the grantor asked for it back.  The court found that by executing the deed the grantor did not intend to convey a present interest in the land, but rather to make a posthumous disposition of the real estate.  Mr. Lankheet is not contending that his intentions were to deliver the deed at a later time.

5

Instead, he maintains that he executed and recorded the deed with the intent of <u>never</u> conveying an interest in the land to Ms. Bonzelaar.  However, in order to achieve his goal of tax avoidance/reduction it was necessary to convey the land to Ms. Bonzelaar, and he did not testify that after executing the deed he decided not to carry out his tax plan.  Mr. Lankheet may not have intended to convey to Ms. Bonzelaar an unequivocal present interest immediately upon signing and recording the deed, but he clearly intended to transfer the property (i.e. deliver the deed) when he revealed to Ms. Bonzelaar that she was the record owner of the South Haven property, and directed her to attend the closing and complete the sale.

        The second issue is whether Ms. Bozelaar accepted delivery of the property.  Mr. Lankheet contends that Ms. Bonzelaar did not accept delivery because she (a) initially did not know of the deed; (b) became very angry when she learned of the deed; (c) quit her job with Plaintiff rather than accept the conveyance; and (d) refused to exercise any dominion or control over the property.   Generally, acceptance may be presumed if the grantee has not rejected the deed, but acceptance "cannot be presumed during a period the grantee had no knowledge of the existence of the deed."  <u>Meade v. Robinson</u>, 208 N.W. 41, 43, 234 Mich. 322, 329 (1926); <u>Schmidt</u>, 102 NW 2d at 594, 359 Mich. at 385.  Thus, Ms. Bonzelaar could not accept the deed between the time it was executed and recorded in late December, and the time she learned of its existence in mid-January.  Upon learning of the deed she clearly was angry.  Had she not been preparing to file bankruptcy, or spoken to her bankruptcy attorney about the situation, perhaps she would have rejected the deed.  In <u>Flood v. Flood</u>, 294 NW 714, 295 Mich. 366 (1940), the Court held that the grantee's reconveyance of property to a third party after the deed was recorded constituted acceptance.  In <u>Schmidt</u>, the Court held that the grantees' reconveyance of

property to the grantor so that the grantor could receive a tax benefit from a testamentary transfer constituted acceptance, although the grantees were unaware of the deeds until they were asked to reconvey the property.  Under these cases, Ms. Bonzelaar can demonstrate acceptance by establishing that she acknowledged or acted upon the grant.  Ms. Bonzelaar accepted delivery by listing the South Haven property on her bankruptcy schedule of assets, thereby making the asset available to her creditors.  That she was not pleased with the conveyance and may have accepted only at the direction of her bankruptcy attorney are not relevant.

## Conclusion

For the foregoing reasons, the Court AFFIRMS the Judgment dated June 20, 2005, of the Bankruptcy Court.


So ordered this 1st day of September, 2006.

>  /s/ Wendell A. Miles
> Wendell A. Miles
> Senior U.S. District Judge